# Quaker City Mutual Fire Insurance Company *v.* Notter, McCullough & Company.

*Insurance—Mutual fire insurance—Assessments—Cancelation of policy.*

In an action by a mutual fire insurance company to recover assessments, a judgment and verdict for the plaintiff will be sustained where it appears that although assessments greater in amount than stipulated for in the policy were levied, the plaintiff was confined at the trial to the amount stipulated; and that the policy was never in fact canceled, although the defendant alleged that, after the alleged illegal assessments, the company had been notified to cancel the policy; but the letter containing this notice was not produced, nor was the policy ever sent to the company for cancelation,

596, (1901).]     Statement of Facts—Charge of Court.

Argued October 24, 1900. Appeal, No. 71, Oct. T., 1900, by defendants, from judgment of C. P. Clearfield Co., Dec. T., 1895, No. 85, on verdict for plaintiff in case of Quaker City Mutual Fire Insurance Company v. Notter, McCullough & Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover assessments on a policy of fire insurance. Before GORDON, P. J.

At the trial it appeared that the policy contained a provision that "premium and assessments on this policy shall not exceed four per cent tariff." The defendant claimed that the assessments levied on their policy were in excess of the stipulated limit. They also claimed that after the first assessment had been made they wrote to the company directing them to cancel the policy. This letter was not produced, and, as a matter of fact, the policy never was canceled.

The court charged in part as follows :

[As to the representation that the assessments, including the premium, would not likely exceed one half of what the insurance in stock companies would cost, that was a mere representation, and it does not pretend to have been made as a binding stipulation or agreement; on the contrary, the representation the agent made as to the maximum assessments not exceeding four per cent is conclusive evidence that no binding contract was made, but that it was a mere representation made during the dickering for the insurance, and that there is no pretense of any intention on his part or on the part of the defendant to make any oral change in the contract itself.

Further, the representation, even if made, and false, would not constitute fraud in view of the contract which was mutually entered in by the parties.] [1]

As to the stipulation that in no event should the premium and assessments exceed four per cent per annum of the sum insured, it is made a part of the contract of the insurance. This contract consists of the policy and the application. The application, which is signed by the defendants, is incorporated into and made a part of the policy of insurance which was signed by the insurance company, and, as we read in your

hearing, this contract contains a clause which limits the right of the agent to in any manner change the stipulations or the contracts of the company, unless the stipulation be in writing and be made a part of the contract itself. That is to say, it prohibits him from making any oral stipulation contemporaneous with the written contract entered into between the parties. Now here the stipulation in question is incorporated into the contract itself, is made a part of the application which is the foundation of the insurance.

[Next, as to the oral agreement alleged by the defendant to have been made by the agent of the company, that if the assessments exceeded four per cent the insured could cancel the policy. Our view thereon is this: That the evidence is not sufficient, in the first place, to work a change in the contract itself. There is no such evidence of fraud, accident or mistake as to justify the court in submitting the question to the jury of whether or not the contract between the parties is anything other than the writing which has been signed by them. If we submitted that question to the jury, in the view we take of the matter now, it would be error, and if that be not a part of the contract then there is no evidence in this case of any breach of the contract. Further, neither is there evidence of fraud in view of the fact that this very stipulation is set out in the contract and is binding upon the company; that is to say, that the contract between the parties contains the stipulation that the company cannot under any circumstances make assessments exceeding four per cent. Now, if the company cannot make assessments exceeding that amount, why authorize the defendants to cancel the policy if they should do it, when in the very teeth of their contract they are prohibited from doing it—they cannot do it legally? Again, the agent had no right to make any such oral stipulation. The contract itself prohibited him from doing so. The application which was incorporated into and became a part of the policy was signed by the defendants, and they are presumed to have known its contents, and knowing the agent's lack of authority, they had no right to permit themselves to be deceived by any representations upon that point which the agent might make. Again, the defendants, as we said, could not be defrauded or injured by the alleged oral stipulation, even if made, because the company, if so disposed,

could not assess more than four per cent. There is no possibility of injury to them from violation of such stipulation. Here the evidence shows the company tried to collect more, but finding itself unable to do so, reduced its claim so as not to exceed the four per cent.] [2]

[And, in addition to all of this is the evidence upon the following points: 1. That the defendant was legally insured and had the protection afforded by the policy, at least up to the time when they learned of the assessment in excess of four per cent. 2. That in the mean time other members joined this mutual association and became obligated with the defendants. Accordingly they had the right to assume that the defendants were liable as comembers with them according to the terms of their respective policies, and a serious question arises whether the defendants are not estopped on account of that.] [3]

[Still further is the question whether there has been a legal rescission of the contract, even if the defendants were entitled to rescind. The evidence shows that the policy was not surrendered; the only thing done by the defendants was to write the letter in question upon receipt of the first instalment, first assessment, to the effect that they would rescind, or words to that effect. There is no evidence in the case that the insurance company received this letter, or even of its having been mailed by the defendants, no evidence that they ever deposited it in the post office.] [4]

[Now, as we said before, the legal questions are not clear, but as we are at present advised our view of the law is as stated, and we can scarcely see any questions of fact in it for the jury; and under the evidence we deem it to be our duty to direct a verdict for the plaintiff for the amount of its claim as reduced and without the twenty-five per cent penalty mentioned in the policy, and will reserve the legal question as before stated. The plaintiff's calculation, as thus reduced, makes the claim up to this time, with interest, but without the penalty, $207.40, and we will instruct the clerk to take your verdict accordingly for that amount.] [5]

The jury returned a verdict of $207.40, the court reserving the question whether the plaintiff was entitled to recover. Subsequently judgment was entered on the verdict. Defendants appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*J. B. McEnally*, of *McEnally & McCurdy*, with him *W. C. Pentz*, for appellant.—We cite, as bearing on the legal questions in this case, Howard v. Turner, 155 Pa. 349, Lycoming Fire Ins. Co. v. Woodworth, 83 Pa. 223, Angell & Ames on Corporations, sec. 309, Sunbury Fire Ins. Co. v. Humble, 100 Pa. 495, and Shaw v. Turnpike Co., 2 P. & W. 454.

*A. L. Cole*, with him *H. A. Moore*, for appellee.

OPINION BY BEAVER, J., January 22, 1901:

The plaintiff's charter was not in evidence, nor, so far as we can find, were its constitution and by-laws. It appears incidentally from some of the papers in evidence that it was incorporated in 1883. It was, therefore, governed by the provisions of the Act of May 1, 1876, P. L. 53, in pursuance of which insurance companies incorporated thereunder were entitled "to make insurance, either upon the stock or mutual principle, against fire on all kinds of buildings, merchandise and other property." Whether the plaintiff was a purely mutual company or whether it had authority to issue policies upon either the stock or mutual plan, or whether, if mutual, under the terms of its charter, it could limit its assessments to a fixed amount, are questions which do not appear to be answered by the evidence adduced in the trial.

The defendants made their application for insurance in which "it is agreed that premium and assessments on this policy shall not exceed four per cent tariff." The policy was issued in pursuance of the terms of the application. Although assessments greater in amount than that stipulated for in the policy were levied, the plaintiff was confined at the trial to the amount so stipulated. The defendants, therefore, suffered no harm by the assessments, of which they had due notice. Although after notice of the first assessment, the defendants allege that a letter was written by them to the plaintiff, telling it to cancel the policy, the letter was not produced by the plaintiff and no copy of it was furnished, but it is not alleged that the policy was sent to the company for cancelation, because of its failure to

comply with the terms thereof. The plaintiff regarded the policy as continuing and levied assessments upon it continuously during its life. As a matter of fact, the policy was not canceled. Whether or not the defendants would have been entitled to recover upon the policy, in case of loss, might have been a question, in view of their failure to pay assessments according to the terms of their policy; but whether that be so or not it is certain that their duty to their fellow members required them to pay whatever assessments were levied upon them for losses occurring during the life of their policy, at least to the extent of their contract.

Recovery was had in the court below only for the amount which would have been due the plaintiff, if the assessments had been levied in pursuance of the terms of the application and the policy which issued in accordance therewith. The facts were practically undisputed, no issue as to the veracity of witnesses was raised, and the opinion of the court upon the reserved question shows that, if a verdict had been rendered for the defendants, it would not and perhaps could not have been sustained. We have not discussed the specifications of error seriatim, but these general remarks would seem to cover all that is necessary to be said in regard to them. We discover no error in the record, as presented to us, and the judgment is, therefore, affirmed.